UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAQUAN W. PARKER,

      Plaintiff,

v.                                      Case No. 8:18-cv-175-30CPT

STACY M. BUTTERFIELD, POLK
COUNTY, FLORIDA CLERK OF
COURT AND COMPTROLLER,
and THE HONORABLE JUDGE
MICHAEL E. RAIDEN OF
10TH JUDICIAL CIRCUIT,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before me on referral for a Report and Recommendation on the Plaintiff's *[Amended] Complaint for Violation of Civil Rights* (Amended Complaint) (Doc. 11) and his *[Renewed] Application to Proceed in District Court Without Prepaying Fees or Costs* (Renewed Application) (Doc. 12).

For the reasons set forth below, I respectfully recommend that the Plaintiff's Renewed Application be denied and that his Amended Complaint be dismissed.

## BACKGROUND

The Plaintiff initiated this action in January 2018 against Stacy M. Butterfield, Polk County's Clerk of Court and Comptroller (Clerk Butterfield), and the Honorable Michael E. Raiden, a Circuit Court Judge in Florida's Tenth Judicial Circuit (Judge Raiden), both in their official capacities.  (Doc. 1 at 2).  In his initial Complaint, the Plaintiff sought relief against the Defendants under 42 U.S.C. §§ 1983, 1985; 18 U.S.C. § 1001; and the Fourteenth Amendment for "illegal and malice [sic] conduct and activities" occurring from 2013 to 2015 during criminal and civil proceedings in the state courthouse in Bartow, Florida.  (Doc. 1 at 3-4).  He alleged in conclusory fashion that the Defendants' "illegal alterations caused undue hardship, false incarcerations, false convictions and violations of due process, pain and suffering[,] and punitive losses all with Michael E. Raiden [as] presiding judge."  *Id*. at 4.  He also charged the Defendants with spoliation of evidence as well as hiding and altering public records. *Id.*  Based on these allegations, the Plaintiff requested $12 million in damages and the implementation of "strict checks and balances . . . to enforce accountability amongst court house officials to ensure public safety."  *Id.* at 5.

On his first construed motion to proceed *in forma pauperis*, I recommended that the Plaintiff's Complaint be dismissed without prejudice because he did not demonstrate an entitlement to indigent status, and because his Complaint suffered from several fatal defects. (Doc. 9).  Of relevance here, those defects included that the Plaintiff's allegations were barred by the doctrine of judicial immunity and failed to state a viable claim for relief.  *Id.* at 4-10.

The Plaintiff did not object to my Report and Recommendation, which the Court thereafter adopted.  (Doc. 10).  In doing so, the Court directed the Plaintiff to file an amended complaint as well as a renewed motion to proceed *in forma pauperis*. *Id.*  The Plaintiff complied with this directive on May 17, 2018.  (Docs. 11, 12).

In his Amended Complaint, the Plaintiff now sues the Defendants in their individual—not official—capacities.  (Doc. 11 at 2).  He also expands somewhat upon the factual material underlying his claims.  *Id.* at 4.  In particular, the Plaintiff alleges that Judge Raiden "coax[ed] the Clerks" to take illegal action against him at the time Plaintiff was a defendant in a criminal proceeding.  *Id.*  He asserts in this regard that Judge Raiden and Clerk Butterfield "altered public records to commence usual punishment that set [him] up for failure within the Criminal Division by willfully [placing him] as a falsely convicted Felon" and by "willfully failing to fix the altered record."  *Id.*

While not entirely clear, the Plaintiff additionally appears to claim that such misconduct had collateral consequences in a civil proceeding to which he was a party. *Id.*  The Plaintiff also seems to contend that the Defendants conspired with other individuals to ensure that the alteration of public records would not be acknowledged or fixed, and that their actions were inspired by "personal retaliation."  *Id.*  As before, he states that the events giving rise to his claims occurred at the Tenth Judicial Circuit Courthouse in Bartow, Florida, although he narrows the time frame to 2014 to 2015. *Id.*

3

In addition to these changes, the Plaintiff's Amended Complaint modifies the rights he claims were violated.  While he maintains his original references to the Fourteenth Amendment, Due Process, and 42 U.S.C. § 1985, the Plaintiff no longer includes a reference to 18 U.S.C. § 1001.  *Id.* at 3.  Instead, he attempts to add claims under the Eighth Amendment, the Florida Constitution, the Florida Statutes, as well as two criminal provisions—namely 18 U.S.C. §§ 241, 242.  *Id.*

To redress the alleged harms, the Plaintiff again seeks compensation of $12 million, along with the imposition of "strict checks and balances" in the Tenth Judicial Circuit to deter future transgressions of this nature and to benefit the public trust.  *Id.* at 5.

## DISCUSSION

Although set forth in my prior Report and Recommendation, the law governing requests to proceed *in forma pauperis* bears repeating here.

Pursuant to 28 U.S.C. § 1915, a district court "may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor" upon a showing of indigency by affidavit.  28 U.S.C. § 1915(a)(1).  The court has "wide discretion" to grant or deny an application to proceed *in forma pauperis*, and, in civil cases for damages, the privilege should be granted "sparingly."  *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306-07 (11th Cir. 2004) (citation omitted).  While such an application "need not show that the litigant is absolutely destitute," it must indicate "that the litigant, because of his poverty, is unable to pay for the court fees and costs,

and to support and provide necessities for himself and his dependents." *Id.* (citing *Adkins v. E.I. Dupont de Nemours & Co.*, 335 U.S. 331, 338-40 (1948) (internal quotation marks omitted)).

When an application to proceed *in forma pauperis* is filed, the district court must also review the case and dismiss the complaint *sua sponte* if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Dismissal for failure to state a claim in this context is governed by the same standard as dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Bravo v. Loor-Tuarez*, 727 F. App'x 572, 575 (11th Cir. 2018) (citation omitted).[1] As such, "[t]o avoid dismissal, the 'complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018), *petition for cert. filed*, (U.S. Oct. 18, 2018) (No. 18-511) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In evaluating a plaintiff's complaint under this standard, the court must accept all well-pleaded factual

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

allegations as true and construe them in the light most favorable to the plaintiff. *Jara v. Nunez*, 878 F.3d 1268, 1271-72 (11th Cir. 2018) (citation omitted). The court, however, "afford[s] no presumption of truth to legal conclusions and recitations of the basic elements of a cause of action." *Franklin*, 738 F.3d at 1248 n.1 (citations omitted).

Finally, while *pro se* pleadings are to be construed liberally, the courts are not to serve as *de facto* counsel for *pro se* litigants, nor are they to "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (citation omitted).

For the reasons discussed below, I am unable to find that the Plaintiff's allegations of poverty entitle him to proceed *in forma pauperis*. In addition, I find that his Amended Complaint suffers from some of the same infirmities articulated in my prior Report and Recommendation.

## I.     Plaintiff has not Established his Indigency

While the Plaintiff has attempted to remedy the deficiencies of his initial Application, he still has not shown an entitlement to proceed *in forma pauperis* under section 1915(a)(1). According to his Renewed Application, the Plaintiff remains employed at Max Pak and grosses $1,800 to $1,900 per month, with monthly expenses totaling $1,390.[2] (Doc. 12 at 2-5). Thus, a comparison of the Plaintiff's income versus

---

[2] Where the Plaintiff reports a range for a monthly expense, I have used the highest figure he provided in arriving at this sum.

his monthly expenses indicates he is able to make prepayment of the fees and costs required to commence this action and does not qualify as indigent.

The fact the Plaintiff now alleges that his dependents and cost of living also contribute to his inability to pay the expenses associated with the instant litigation does not alter my conclusion. *Id.* at 5. The only "dependent" the Plaintiff identifies is his twenty-seven-year-old girlfriend, and he does not expand upon this claimed dependency or describe his additional "costs of living." *Id.* at 3-5.

## II. Plaintiff's Amended Complaint is Subject to Dismissal

As stated above, the Court must dismiss a complaint that seeks monetary relief against a defendant who is immune from such relief or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). The Plaintiff's Amended Complaint against Judge Raiden and Clerk Butterfield does not survive this scrutiny.

### A. *The Doctrine of Judicial Immunity Bars the Plaintiff's Claims*

The doctrine of judicial immunity affords judges "absolute . . . immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (quoting *Bolin v. Story,* 225 F.3d 1234, 1239 (11th Cir. 2000)). This doctrine extends to state and federal court judges alike, *Stevens v. Osuna*, 877 F.3d 1293, 1302 (11th Cir. 2017) (citing *Pierson v. Ray*, 386 U.S. 547 (1967)), as well as to claims lodged against them in their individual capacities, *Sibley*, 437 F.3d at 1074 (citing *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996)).

To determine whether a judge is entitled to absolute immunity, courts apply a two-part test: (1) whether the judge performed the challenged acts in his judicial capacity; and (2) whether such actions clearly fell outside the judge's jurisdiction. *Scott v. Hayes*, 719 F.2d 1562, 1564 (11th Cir. 1983) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)).  In evaluating whether a judge's acts were performed in his judicial capacity under the first prong of this test, courts concentrate on "the 'nature' and 'function' of the act, not the 'act itself.'"  *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (quoting *Stump*, 435 U.S. at 362).  Factors relevant to this inquiry include whether: "(1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity."  *Sibley*, 437 F.3d at 1070 (citing *Hayes*, 719 F.2d at 1565).  Each factor, however, need not be present for judicial immunity to attach. *Harris v. Deveaux*, 780 F.2d 911, 915 (11th Cir. 1986).

With respect to the second prong of the test, a judge is deemed to act in the "clear absence of all jurisdiction" only when he acts without subject-matter jurisdiction, and not when he acts erroneously, maliciously, or even in excess of his jurisdiction.  *Maps v. Miami Dade State Attorney*, 693 F. App'x 784, 785-86 (11th Cir. 2017) (citing *Dykes v. Hosemann*, 776 F.2d 942, 947-48 (11th Cir. 1985)) and *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000)); *see also Mireles*, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice"); *Hayes*, 719 F.2d at 1564 (finding judge entitled to absolute immunity from plaintiff's civil rights claims

where both parts of test were met, "despite the egregious and injudicious character of his actions").

The Eleventh Circuit has instructed that, where a defendant is absolutely immune from suit, dismissal before service is warranted "[e]ven if the complaint otherwise states a claim and the alleged facts are not fantastic." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (citing *Clark v. State of Georgia Pardons and Paroles Bd.*, 915 F.2d 636, 640 n.2 (11th Cir. 1990)); *see also See Wright v. Pearson*, 2018 WL 4610708, at *1 (11th Cir. Sept. 25, 2018) ("We have recognized that a case is due to be dismissed for failure to state a claim when immunity 'is an obvious bar given the allegations' in the complaint.") (citing *Sibley*, 437 F.3d at 1067).

With respect to the first part of the judicial immunity test, the Amended Complaint provides no reason to believe that Judge Raiden was not serving in his judicial capacity at the time of the challenged acts. According to the Plaintiff's allegations, during a criminal proceeding in which he was a defendant, Judge Raiden caused the Plaintiff to be "placed" as a "falsely [*sic*] convicted Felon" in certain unspecified public records and "willfully fail[ed] to fix the altered records." (Doc. 11 at 4). While the particulars of the acts and the circumstances under which they were taken are not entirely clear, there is no suggestion that Judge Raiden's actions fell outside of his role as a judge. Indeed, certifying that a defendant is guilty of a felony is a normal judicial function. And, Florida law requires judges to attest to such judgments. Fla. Stat. § 921.241(2) ("Every judgment of guilty or not guilty of a felony shall be in writing, signed by the judge, and recorded by the clerk of the court.").

9

That the Amended Complaint does not address whether this act occurred in open court or in Judge Raiden's chambers is of no moment. What is clear is that this controversy involved a case or cases pending in the Tenth Judicial Circuit on which Judge Raiden serves. The Amended Complaint makes explicit in this regard that the complained-of acts occurred at the time he was a defendant in a criminal proceeding. (Doc. 11 at 4). Focusing on the "nature" or "function" of the acts alleged, it is apparent that Judge Raiden was serving in a judicial capacity when he caused the Plaintiff to be identified in public records as a convicted felon, even if this label was "false," as the Plaintiff claims. *See, e.g., Sibley*, 437 F.3d at 1072-73 (distinguishing the question of whether ordering plaintiff's incarceration was appropriate from the relevant inquiry of whether ordering civil incarceration is a judicial activity).

Turning to the second part of the judicial immunity test, the Amended Complaint also provides no reason to conclude that Judge Raiden acted clearly outside of his jurisdiction. The Amended Complaint does not allege that Judge Raiden lacked jurisdiction over the criminal proceedings underlying the Plaintiff's allegations. Rather, the gist of the Plaintiff's assertions is that the improper motivation behind Judge Raiden's acts divests him of any potential immunity. *See* (Doc. 11 at 4) ("It has been proven that these actions [were] willful and outside the legal [functions] as no Clerk or Judge has a right to alter records for personal retaliation . . . ."). As set forth above, however, allegations that a judge acted in bad faith, with malice, or for improper purposes, in and of themselves, erect no bar to a finding of judicial immunity. *See Hayes*, 719 F.2d at 1567 ("Although Judge Hayes undoubtedly egregiously erred in

10

suggesting or ordering that the plaintiff undergo a vasectomy as a condition of a favorable property settlement, in doing so he did not act in the clear absence of all jurisdiction.").

The Eleventh Circuit's decision in *Hyland v. Kolhage*, 267 F. App'x 836 (11th Cir. 2008), is instructive on this point. In that case, the court held that a Florida circuit court judge who presided over the plaintiff's sentencing hearings was entitled to judicial immunity irrespective of the plaintiff's allegations that the judge directed a clerk to doctor court minutes in order to reflect a sentencing condition the judge did not actually impose at the plaintiff's sentencing hearing. *Id.* at 839-41. The plaintiff in *Hyland* contended that the judge knew he did not order the plaintiff to complete a recovery program as a special condition of probation, yet caused the clerk to alter the court minutes to include this condition in violation of the plaintiff's due process rights. *Id.* at 839. Applying the two-part test to these allegations, the Eleventh Circuit concluded that the judge's actions were taken in his judicial capacity and that he did not act in the absence of all jurisdiction. *Id.* at 840-41.

In light of all of the above, the doctrine of judicial immunity bars the Plaintiff's claims for damages against Judge Raiden.

I similarly find that immunity attaches to the challenged acts of Clerk Butterfield. Although court clerks "enjoy a narrower ambit of immunity than judges[,] . . . they have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction." *Hyland*, 267 F. App'x at 842 (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981) (internal

11

quotation marks omitted)).  Like judicial immunity, a clerk's absolute immunity for such acts is not pierced even when she is alleged to have acted in bad faith or with malice.  *Id.* (quoting *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980)).

Here, the Plaintiff's Amended Complaint expressly alleges that Judge Raiden "coax[ed] the Clerks to commit criminal actions unto [him], at the time [he] was a [d]efendant in a criminal proceeding."  (Doc. 11 at 4).  Because these allegations make clear that Clerk Butterfield was acting at Judge Raiden's direction at the time she allegedly altered the Plaintiff's records, she is entitled to absolute immunity from damages arising from this challenged conduct.  *See Hyland*, 267 F. App'x at 842-43 (affording state court clerks absolute immunity against allegations they denied plaintiff's motions or dismissed his petitions with the concurrence of the judges for whom they worked); *Blough v. Nazaretian*, 2016 WL 9631677, at *5 (M.D. Fla. Oct. 12, 2016) (affording state court clerks absolute immunity against allegations they denied plaintiff's motions or dismissed his petitions at the direction or with the concurrence of the judges for whom they worked).

The Plaintiff's request for non-monetary relief against Judge Raiden and Clerk Butterfield is likewise misguided.  In this respect, the Plaintiff asks "for accountability to be upheld with strict checks and balances to ensure this tyranny does not happen again in the [Tenth] Judicial Circuit Court House and to also uphold accountability for public trust."  (Doc. 11 at 5).  While not clear, this request appears to seek an order from the Court directing the manner in which Judge Raiden and/or Clerk Butterfield

perform their duties, which is essentially a form of mandamus.[3]  *See Reese-Lennell v. Shore*, 2018 WL 1748103, at *6 (M.D. Fla. Mar. 6, 2018), *report and recommendation adopted,* 2018 WL 17387234 (M.D. Fla. Apr. 11, 2018) ("A request for an order requiring a state court or judge to do or not do something is properly construed as a petition for mandamus.") (citing *Bailey v. Silberman*, 226 F. App'x 922, 924 (11th Cir. 2007)).  Federal courts, however, do not have the authority to issue writs of mandamus instructing state courts and their judicial officers how to perform their duties.  *Johnson v. Georgia*, 661 F. App'x 578, 581 (11th Cir. 2016) (upholding district court's denial of plaintiff's motion for injunctive relief because it correctly concluded that it lacked jurisdiction to direct a county trial court in the performance of its duties).

To the extent that the Plaintiff instead seeks some form of an injunction against the Defendants "to ensure this tyranny does not happen again" (Doc. 11 at 5), the Plaintiff has not shown that he has standing to do so.  Where, as here, a plaintiff seeks an injunction to regulate future conduct, he must allege "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury."  *Grimes v. Florida*, 2014 WL 1331045, at *5 (M.D. Fla. Apr. 1, 2014) (quoting *Wooden v. Bd. Of Regents*, 247 F.3d 1262, 1284 (11th Cir. 2001)) (emphasis in original); *see also Washington v. Vogel*, 156 F.R.D. 676, 679-81 (M.D. Fla. 1994) ("When a victim of alleged police misconduct seeks an injunction prohibiting future such misconduct,

---

[3] "Mandamus, which is an extreme form of equitable relief, is a writ designed to require an official to perform an act required by law."  *Preferred Sites, LLC v. Troup Cty.,* 296 F.3d 1210, 1220 (11th Cir. 2002) (quotation omitted).

his standing depends on a showing that he faces a real and immediate threat that he will again suffer from the misconduct.") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983))

The Plaintiff's Amended Complaint sets forth no facts tending to show that he is subject to a real and immediate threat of a future injury at the hands of the Defendants. Instead, it describes only past conduct that allegedly occurred while he was a litigant in the Tenth Judicial Circuit Court and vaguely asserts that "questionable [acts are] still occurring to this day." (Doc. 11 at 4-5). As such, the Plaintiff has not established that he has standing to enjoin any prospective conduct of the Defendants. *See, e.g., Grimes*, 2014 WL 1331045, at *5 (rejecting for lack of standing plaintiff's attempt to compel the state courts to comply with the Americans with Disabilities Act going forward where the complaint did not allege that plaintiff was currently involved in state-court litigation or likely to be so involved and potentially require its accommodations).

Even if the Plaintiff does have standing, section 1983 by its terms does not allow for injunctive relief against judicial officers for acts or omissions made in their judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Because the Amended Complaint does not allege facts showing that this standard has been met, injunctive relief against Judge Raiden and Clerk Butterfield under section 1983 is not available to the Plaintiff. *See Esenoy v. McMillan*, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007) (explaining that judicial immunity protects defendant state court judges from plaintiff's request for injunctive

relief made in section 1983 action); *Maps*, 693 F. App'x at 786 ("Absolute judicial immunity . . . protects judges from suits for money damages as well as injunctive relief, except where 'a declaratory decree was violated or declaratory relief was unavailable.'") (quoting *Bolin*, 225 F.3d at 1239)).

      B.     *Plaintiff's Amended Complaint Otherwise Fails to State a Viable Claim*

In addition to the grounds set forth above, I find that the Plaintiff's Amended Complaint is subject to dismissal for otherwise failing to state a viable claim. As noted above, the Plaintiff seeks to sue the Defendants under section 1983 for alleged violations of his rights under various state and federal laws as well as the Florida and United States constitutions. None of these claims survive scrutiny.

To state a claim under section 1983, a plaintiff must assert, at a minimum, that "the defendant deprived him of a right secured under the United States Constitution or federal law." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted); *see also Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) (stating that section 1983 creates a remedy for only those wrongs "that deprive a plaintiff of a federal right") (citation omitted). The Plaintiff's section 1983 claims based on state law and state constitutional violations fail to satisfy this requirement.[4]

---

[4] While I do not read the Plaintiff's Amended Complaint to assert independent claims under Florida law and the Florida Constitution, any such independent claims would be subject to dismissal in any event. Florida Statutes §§ 777.04(2) and (3), which the Plaintiff cites, both concern the crime of conspiracy and fall within the state's criminal code. As such, they do not provide the Plaintiff with a vehicle for recovery through a private suit. *Kellar v. Florida Dept. of Corrections*, 2015 WL 1296030, at *3 (N.D. Fla. Mar. 22, 2015) (finding that plaintiff may not recover against state correctional department defendants under Section 777.04(3)); *Carter v. Brown Mackie College Miami & Education Management Corporation*, 2016 WL 6496632, at *1 n.1

The Plaintiff's efforts to ground his section 1983 claim in various federal statutes and the United States Constitution fare no better.  Sections 241 and 242 of Title 18 of the United States Code, upon which the Plaintiff relies, are "criminal statutes that do not provide a private right of action."  *Paletti v. Yellow Jacket Marina, Inc.*, 395 F. App'x 549, 552 n.3 (11th Cir. 2010); *see also Boatman v. Fortenberry*, 2017 WL 1424638, at *5 (N.D. Fla. Mar. 22, 2017) (finding plaintiff's claims under 18 U.S.C. §§ 241, 242 subject to dismissal "because they are criminal statutes, and the power to prosecute criminal cases is vested exclusively in the Executive Branch") (citations omitted), *report and recommendation adopted*, 2017 WL 1428713 (Apr. 20, 2017).  In addition, the "Plaintiff has no constitutionally protected interest in the criminal prosecution of another."  *Boatman*, 2017 WL 1424638, at *5.  Accordingly, his claims predicated on these criminal provisions should be dismissed.

---

(S.D. Fla. Feb. 4, 2016 ) ("[F]lorida Statutes . . . Section 777.04 describe[s] criminal violations not enforceable through private suits.").

   The Plaintiff's reliance on Sections 8(c) and 8(g) of Article II of the Florida Constitution, which set forth ethical standards for certain public officials, is similarly misplaced.  (Doc. 11 at 3).  The Florida Supreme Court has expressly held that Section 8(c) is not enforceable through a suit brought by an individual.  *St. John Medical Plans, Inc. v. Gutman*, 721 So.2d 717, 720 (Fla. 1998) ("[W]e agree with the district court below that the language of article II, Section 8(c) provides that liability is to the state.  Therefore, only the state has standing under article II, Section 8(c), not individual citizens.").  While there appears no analogous authority for Section 8(g), this provision merely states that a code of ethics prohibiting conflicts of intertest involving state employees and nonjudicial officers shall be prescribed by law.  Fla. Const., Art. II, Sec. 8(g).  Nothing in this section suggests that it affords the Plaintiff a private right of action through which he may endeavor to hold Judge Raiden and Clerk Butterfield civilly liable.

The Plaintiff's claim based on 42 U.S.C. § 1985(3) is likewise subject to dismissal. To establish a claim under that provision, a plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (citation omitted).

Setting aside the other elements of the Plaintiff's section 1985(3) claim, it is evident from the face of the Amended Complaint that the second element is wanting. That element requires a showing of "some 'racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' actions.'" *Farrell v. Woodham*, 2002 WL 32107646, at *3 (M.D. Fla. May 29, 2002) (quoting *Childree v. UAP/Ga AG Chem., Inc.,* 92 F.3d 1140, 1147 (11th Cir. 1996), *cert. denied,* 519 U.S. 1148 (1997)). The Amended Complaint is devoid of any facts suggesting that the Defendants harbored any such motive or that the Plaintiff belongs to a protected class.

The Plaintiff has similarly failed to state a viable section 1983 claim based on alleged violations of the United States Constitution. Construed liberally, it appears that the Plaintiff alleges that the Defendants' purported alteration of public records caused him to be "falsely convicted" of a felony and subsequently imprisoned, in violation of his right to due process under the Fourteenth Amendment and his right not to be subjected to cruel and unusual punishment under the Eighth Amendment.

17

(Doc. 11 at 4-5).[5]  Both of these claims are barred under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

> In *Heck*, the Supreme Court held:
>
> > [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 486-87 (footnote omitted).

The purpose of the rule announced in *Heck* is "to limit the opportunities for collateral attack on state court convictions because such collateral attacks undermine the finality of criminal proceedings and may create conflicting resolutions of issues." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (citing *Heck*, 512 U.S. at 485).

Here, the Plaintiff's claims under the Eighth and Fourteenth Amendments are based on the premise that he was unlawfully convicted and sentenced.  As such, they

---

[5] Although the Plaintiff states generally that his procedural due process rights have been violated (Doc. 11 at 3), he fails to allege any facts or "constitutionally inadequate process" that would support such a claim, *see J.R. v. Hansen*, 803 F.3d 1315, 1320 (11th Cir. 2015).

necessarily imply the invalidity of his conviction and sentence.  Because the Plaintiff

has not alleged, much less demonstrated, that his conviction and sentence have been

invalidated, his Eighth and Fourteenth Amendment claims for monetary damages are

subject to dismissal.  *See Boatman*, 2017 WL 1424638, at *4 (finding plaintiff's Eighth

and Fourteenth Amendment claims subject to dismissal under *Heck* because plaintiff

had yet to obtain invalidation of his conviction through habeas corpus or other

appropriate state remedy).

## CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court:

1)      DENY the Plaintiff's *[Renewed] Application to Proceed in District Court Without Prepaying Fees or Costs* (Doc. 12);

2)      DISMISS his *[Amended] Complaint for Violation of Civil Rights* (Doc. 11); and

3)      DIRECT the Clerk of Court to terminate any pending motions and deadlines and to close the case.

Respectfully submitted this 1st day of November 2018.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).


Copies furnished to:
Honorable James S. Moody, Jr., United States District Judge
*Pro se* Plaintiff